United States District Court
Southern District of Texas
**ENTERED**
May 08, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BENJAMIN FRANKLIN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-370 |
| | § | |
| BEEVILLE CITY, TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND TO DISMISS CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Benjamin Franklin is a Texas inmate appearing *pro se* and *in forma pauperis*. In this prisoner civil rights action, Plaintiff alleges that Defendants violated his Eighth Amendment rights. Pending before the Court is a Motion for Summary Judgment filed by Bobby Lumpkin and Gary Pendarvis. (D.E. 120).

For the reasons stated herein, the undersigned respectfully recommends that the Court **GRANT** Defendants' summary judgment motion. The undersigned respectfully recommends further that Plaintiff's claims against Defendants Lumpkin and Pendarvis in their official capacities for declaratory and injunctive relief be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I.      JURISDICTION**

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331. This case was referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and is presently housed at the McConnell Unit in Beeville, Texas. The facts giving rise to Plaintiff's claims occurred in connection with Plaintiff's current assignment to the McConnell Unit.

In his original complaint, Plaintiff sued Beeville City, Texas as well as the following TDCJ and McConnell Unit officials: Maintenance Supervisor Gary Pendarvis, Assistant Regional Director P. Chapa, Lieutenant Christie L. Garcia, American Correctional Association Auditor (ACAA) for the TDCJ Bobby Humpkin, and Assistant Warden Kenneth M. Putnam, Jr. (D.E. 1, pp. 3, 31). Plaintiff claimed that Defendants violated his Eighth Amendment rights. (D.E. 1, p. 4). Plaintiff subsequently filed numerous supplemental pleadings and declarations in which he advanced additional claims.

On February 28, 2018, due to the difficulty encountered in evaluating Plaintiff's claims as presented in his original complaint and various supplemental pleadings, Magistrate Judge B. Janice Ellington ordered Plaintiff to name each Defendant he seeks to sue and present all his claims in a comprehensive amended complaint. (D.E. 21). Plaintiff ultimately submitted his comprehensive amended complaint on June 18, 2018. (D.E. 65). Therein, Plaintiff names the following defendants: (1) the City of Beeville; (2) Maintenance Supervisor Pendarvis; (3) Assistant Regional Director Chapa; (4) Lieutenant Garcia; (5) ACAA Humpkin; and (6) Assistant Warden Putnam. (D.E. 65, pp. 3, 19). Plaintiff sues the individual defendants in both their individual and official

capacities.

Plaintiff claims that Defendants: (1) acted with deliberate indifference to his health by exposing him to unsafe drinking water; (2) failed to protect him by placing him in a cell with dangerous inmates; and (3) entered into civil conspiracies to deny Plaintiff's constitutional rights and subject him to a campaign of harassment. He seeks declaratory, injunctive, and monetary relief.

On June 27, 2018, Magistrate Judge Ellington issued a Memorandum and Recommendation (M&R), recommending that: (1) the Court retain Plaintiff's deliberate indifference claims against Defendants Pendarvis and Humpkin with regard to being exposed to unsafe drinking water; (2) Plaintiff's claims for money damages against all individual Defendants in their official capacities be dismissed as barred by the Eleventh Amendment; and (3) Plaintiff's remaining claims against Defendants be dismissed with prejudice for failure to state a claim upon which relief can be granted and/or as frivolous. (D.E. 70).  Magistrate Judge Ellington, therefore, ordered service of Plaintiff's complaint on Defendants Pendarvis and Humpkin.  (D.E. 71).  Senior District Judge Hilda G. Tagle subsequently adopted the M&R.  (D.E. 100).

On November 28, 2018, Magistrate Judge Ellington ordered the Clerk of the Court to substitute "Bobby Lumpkin" in place of "Bobby Humpkin" as a party defendant in this case and to serve Plaintiff's Amended Complaint on Defendant Lumpkin.  (D.E. 90). Defendants Pendarvis and Lumpkin (collectively referred to hereinafter as "Defendants") have filed answers in this case.  (D.E. 77, 96).  On April 8, 2020, Defendants filed a Motion for Summary Judgment.  (D.E. 120). Plaintiff subsequently filed his response.

(D.E. 121).

### III.   SUMMARY JUDGMENT EVIDENCE

Defendants offer the following summary judgment evidence:

Exh. A:   Affidavit of Defendant Lumpkin (D.E. 120-2).

Exh. B:   Affidavit of Defendant Pendarvis (D.E. 120-3).

Exh. C:   Emails concerning boil water notices at the McConnell Unit in August 2017 (D.E. 120-4).

Exh. D:   Laboratory test results of the City of Beeville Water (D.E. 120-5).

Plaintiff, in turn, attached the following summary judgment evidence to his response: (1) Grievance filing information (D.E. 121, pp. 10, 12-13); (2) a portion of TDCJ's policy for retaining grievance records (D.E. 121, p. 11); (3) letter dated January 23, 2020 from the U.S. Department of Justice (DOJ) (D.E. 121, pp. 14-15); and (4) an I-60 complaint dated June 21, 2019 (D.E. 121, pp. 16-17).  Plaintiff's verified amended complaint and attachments thereto also serve as competent summary judgment evidence. *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017).

Like other parts of the record, Plaintiff's verified amended complaint must satisfy Federal Rule of Civil Procedure 56(c) in order to be considered at summary judgment. *See Mengele v. AT&T Servs. Inc.*, No. 3:15-cv-3934, 2017 WL 3835871, at *3 (N.D. Tex. Aug. 9, 2017) ("[T]he verified complaint and sworn interrogatory answers of the *pro se* litigant can be considered as summary judgment evidence *to the extent that such pleadings comport with the requirements of current Rule 56(c)*.") (emphasis added)

(citations omitted).

The undersigned, therefore, will not consider parts of Plaintiff's verified amended complaint that are not made on personal knowledge or that would be inadmissible in evidence. *See* Fed. R. Civ. P. 56(c)(4). Accordingly, the competent summary judgment evidence establishes the following:

**A. Plaintiff's Evidence**

*(1) Verified Amended Complaint*

The City of Beeville provides the McConnell Unit with the only source of drinking water. According to Plaintiff, the drinking water contains a "cross contamination of chemicals and harmful bacteria and other microbes." (D.E. 65, p. 20). The water leaves a "white powdery substance when dried in sink bowl and toilet bowl." (D.E. 65, p. 8).

On August 1, 2017, the City of Beeville provided Defendant Pendarvis with a "Boil Water" notice. (D.E. 65, p. 4). Defendant Pendarvis, who "is legally responsible for adherence to [the] Boil Water Notice," failed to obey the notice and provide Plaintiff with either boiled water or bottled water to drink. (D.E. 65, p. 20). According to Plaintiff, Defendant Pendarvis "was clearly motivated by evil intent." (D.E. 65, p. 20). Plaintiff was harmed after drinking the water in that he received a painful bump under the skin and was charged a $100 medical co-pay in connection with a visit to the medical unit. (D.E. 65, p. 20).

Plaintiff describes Defendant Lumpkin as the "A.C.A. Auditor for [TDCJ] prisons" and responsible for the quality of the drinking water at the prisons. (D.E. 65, p.

3).  Plaintiff informed Defendant Lumpkin about the boil water notices and work orders on the maintenance issues, but Defendant Lumpkin failed to reply or take any corrective measures regarding the water and maintenance issues.  (D.E. 65, p. 22).

In a Step 1 grievance filed on July 27, 2017 (Grievance No. 2017179367), Plaintiff complained about the drinking water being a danger to his health, life, and limb.  (D.E. 65, p. 8).  On September 5, 2017, Assistant Warden Putnam rejected Plaintiff's grievance, concluding that the City of Beeville controlled the filtration of the water and that there had been no notification from the city regarding the quality of the water.  (D.E. 65, p. 9).

Plaintiff subsequently filed a Step 2 grievance (Grievance No. 2017179367) on September 9, 2017, stating that "Boil Water" notices had been provided to the McConnell Unit on August 1 and 18, 2017.  (D.E. 65, pp. 10-11).  Plaintiff indicated in his grievance that the notice was posted in the unit's day rooms but that no water was boiled for offenders for drinking purposes.  (D.E. 65, p. 10).  Assistant Regional Director Chapa rejected Plaintiff's grievance, noting that "[w]hen the City of Beeville is under a water boil notice, ever [sic] effort is made to ensure all offenders are afford [sic] safe portable water."  (D.E. 65, p. 11).

### (2) *Plaintiff's Exhibits*

Plaintiff has submitted evidentiary materials detailing how certain grievances are handled by prison units within the TDCJ.  (D.E. 121, pp. 10, 12-13).   In addition, Plaintiff has submitted a portion of a TDCJ policy regarding the retention and purging of offender grievance records for three years after the date the grievance is closed unless

litigation is pending.  (D.E. 121, p. 11).  In letter dated January 23, 2020 from the DOJ, Plaintiff was informed that the DOJ's special litigation section could not assist Plaintiff in recovering damages or other personal relief.  (D.E. 121, p. 14).

In an I-60 complaint dated June 21, 2019, Plaintiff complained to the medical department at the McConnell Unit about itchy skin, bad breath, and other issues.  (D.E. 121, p. 16).  Senior Practice Manager Tonya Lawson responded that Plaintiff had been seen by a medical provider, who referred Plaintiff for a follow-up.  (D.E. 121, p. 16).

### B. Defendants' Evidence

At all relevant times, Defendant Pendarvis was employed by the TDCJ as the McConnell Unit's Maintenance Supervisor.  (D.E. 120-3, p. 1).  On August 1, 2017, the City of Beeville issued a boil water notice due to low chlorine levels in its municipal water supply.  (D.E. 120-3, p. 1).

In response to the boil water notice, Defendant Pendarvis: (1) ordered that the notice be posted in all housing areas and entrances at the McConnell Unit; (2) consulted with the City of Beeville about the boil water notice; (3) conducted independent testing of the water supply to confirm the absence of harmful bacteria; and (4) ordered a tanker truck of twice-tested potable water which was then dispatched throughout the McConnell Unit, augmenting the ice water coolers already distributed throughout the unit as well as bottled water available at the prison commissary.  (D.E. 120-3, pp. 2-3).  Defendant Pendarvis stated in his affidavit that "drinking water was available to the entire offender population from at least three separate sources, independent of water provided by the City of Beeville, throughout the boil water notice period of August 2017."  (D.E. 120-3, p. 3).

On August 15, 2017, the City of Beeville rescinded its boil water notice. (D.E. 120-3, p. 3; D.E. 120-4, p. 3). Between August 16 and 18, 2017, Defendant Pendarvis conducted independent tests of the water supplied by the City of Beeville and found unusually high levels of chlorine. (D.E. 120-3, p. 3). In an email dated August 18, 2017, Assistant Warden Putnam informed prison officials including Defendant Pendarvis that "[t]he McConnell Unit Administration is taking precautionary steps to ensure the water is consumable." (D.E. 120-4, p. 3).

After consulting with the City of Beeville, Defendant Pendarvis requested and received authority to impose a boil water notice on August 18, 2017. (D.E. 120-3, p. 3). Defendant Pendarvis proceeded to: (1) order another tanker truck of twice-tested potable water for general use at the McConnell Unit; (2) circumvent the City of Beeville and obtain independent testing of the municipal water supply; and (3) lift the boil water notice only after receiving results showing acceptable levels of chlorine and the absence of harmful bacteria. (D.E. 120-3, p. 3). Defendant Pendarvis further stated that there was no indication the water supplied to the McConnell Unit was contaminated with bacteria and was aware of no instance where any individual at the McConnell Unit suffered any ill effects as a result of exposure to the municipal water supply in August 2017. (D.E. 120-3, p. 3).

Defendant Lumpkin states in his affidavit that: (1) since September 1, 2013, he has been employed by the TDCJ as the Director of Manufacturing, Agribusiness, and Logistics Division (MAL); (2) neither him nor his division have any involvement in American Correctional Association accreditation of TDCJ units, aside from operations

pertaining to MAL; (3) neither him nor his TDCJ division had "any involvement in the contracting, management, testing, or delivery of municipal water to TDCJ prison unit"; (4) Defendant Lumpkin had no authority to act upon any notices from municipalities regarding its water supply; (5) in the event water service to a TDCJ facility was interrupted, "MAL assets may be called upon to deliver potable water tankers to the affected site"; and (6) Defendant Lumpkin was not aware of any issues with the City of Beeville's municipal water supply and did not recall receiving any complaints from Plaintiff regarding water supplies at the McConnell Unit during the relevant times. (D.E. 120-2, pp. 2-3).

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence or evaluate the credibility of witnesses. *Id.* Furthermore, affidavits or declarations "must be

made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified

immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 46 F.3d 481, 490 (5th Cir. 2001).

V. **DISCUSSION**

    A. **Individual Capacity Claims**

Defendants contend in their summary judgment motion that they are entitled to qualified immunity with respect to Plaintiff's deliberate indifference claims. (D.E. 120, pp. 5-12). The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

To discharge his burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005). First, he must claim that the defendants committed a constitutional violation under current law. *Id.* (citation omitted). Second, he must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established when the violation occurred. *Id.; Tolan v. Cotton*,

572 U.S. 650, 656 (2014). While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was clearly established, that ordering of the analytical steps is no longer mandatory. *Pearson*, 555 U.S. at 236 (receding from *Saucier v. Katz*, 533 U.S. 194 (2001)).

### *(1) Step 1 – Constitutional Violation*

Plaintiff claims that Defendants acted with deliberate indifference to his health by exposing him to unsafe drinking water. "The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)).

Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

"Deliberate indifference is an "extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A constitutional violation under the Eighth Amendment occurs only when two requirements are met. "First, there is an

objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted).

To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm." *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)). For instance, deliberate indifference may occur when an inmate is exposed to an unsafe condition such as "demonstrably unsafe drinking water" that threatens likely harm to inmates even if no actual harm has occurred. *Helling v. McKinney*, 509 U.S. 25, 44 (1993).

"Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* at 837.

Defendants contend in their summary judgment motion that no competent summary judgment evidence was presented to show that Defendant Lumpkin "was ever aware of, or had the authority to remedy, any issue relating to boil water notices at the McConnell Unit in August 2017." (D.E. 120, p.10). Thus, Defendants argue that

Defendant Lumpkin was not personally involved in any alleged constitutional violation concerning drinking water in August 2017. (D.E. 120, pp. 10-11). Defendants further contend that the competent summary judgment conclusively rebuts any claim that Defendant Pendarvis violated Plaintiff's constitutional rights. (D.E. 120, p. 11).

Plaintiff responds that, based on the information communicated in Assistant Warden's August 18, 2017 email, all officials who received the email acted with deliberate indifference to Plaintiff's life. (D.E. 121, p. 2). He further contends that Defendants should have known about the drinking water issues at the McConnell Unit. (D.E. 121, pp. 3, 6).[1]

### Defendant Lumpkin

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).

In this case, Defendant Lumpkin stated in his affidavit attached to Defendants summary judgment motion that, as the TDCJ's MAL Director, he had no authority to act

---

[1] Plaintiff complains in his response to the summary judgment motion about various maintenance issues unrelated to his Eighth Amendment claim regarding the drinking water. (D.E. 121, pp. 3-4). The Court has already dismissed Plaintiff's deliberate indifference claims regarding Defendants' alleged failure to take any corrective action on various maintenance issues. (D.E. 100). To the extent that Plaintiff attempts to raise new claims in his response to the summary judgment motion, they are not properly before the Court.

upon any notices from municipalities regarding its water supplies. (D.E. 120, p. 2). He further attested that he is not aware of any issues with the City of Beeville's municipal water supply and did not recall receiving any complaints from Plaintiff regarding water supplies at the McConnell Unit during the relevant times. (D.E. 120-2, p. 3).

Defendant Lumpkin acknowledged that, in the event water service to a TDCJ facility was interrupted, assets within his division MAL assets may be sought to deliver potable water tankers to an impacted prison unit. (D.E. 120-2, p. 3). Additional competent summary judgment evidence shows that tankers delivered potable water to the McConnell Unit in August 2017 and that drinking water independent of the water supplied by the City of Beeville was available during the boil water notice period from three different sources. (D.E. 120-3, pp. 2-3).

While Defendant Lumpkin's testimony suggests that potable water may have been supplied to the McConnell Unit from MAL, no evidence has been presented to show that Defendant Lumpkin participated in adversely impacting the distribution of such water to the McConnell Unit or acted in any way other than in a supervisory capacity with the MAL division. The competent summary judgment evidence, therefore, establishes that Defendant Lumpkin had no personal involvement in the any of the acts that purportedly caused Plaintiff's constitutional deprivations.

In his verified amended complaint, Plaintiff states that Defendant Lumpkin is the TDCJ official responsible for the quality of the drinking water at the prisons and that, while being aware of the boil water notices in August 2017, he neither replied to Plaintiff nor took any corrective actions. (D.E. 65, pp. 3, 22). Although his sworn § 1983

amended complaint is proper summary judgment evidence, Plaintiff must as the party with the burden of proof identify genuine issues of material fact to avoid summary judgment in movant's favor. *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996).

Plaintiff has come forward with no evidence in connection with the summary judgment motion to establish a genuine issue of material fact as to whether Defendant Lumpkin was personally involved in any unconstitutional conduct or should be held liable in a supervisory capacity. In sum, even when taking as true the evidence in a light most favorable to Plaintiff, the uncontroverted summary judgment evidence demonstrates that Plaintiff has failed to state an Eighth Amendment claim of deliberate indifference against Defendant Lumpkin in his individual capacity.

### Defendant Pendarvis

Defendants have presented competent summary judgment evidence to show that Defendant Pendarvis responded quickly and competently to the City of Beeville's issuance of a boil water notice in August, 2017. Specifically, the uncontroverted evidence shows that Defendant Pendarvis: (1) ordered the notice to be posted in all housing areas and entrances at the McConnell Unit; (2) conducted independent testing of the water supply to confirm the absence of harmful bacteria; and (3) ordered a tanker truck of twice-tested potable water which was then dispatched throughout the McConnell Unit. (D.E. 120-3, pp. 2-3).

When the boil water notice was rescinded on August 15, 2017, Defendant Pendarvis conducted additional independent tests which led to another boil water notice

being issued on August 18, 2017. (D.E. 120-3, p. 3; D.E. 120-4, p. 3). The competent summary judgement evidence reflects that, in response to the August 17, 2017 boil water notice, Defendant Pendarvis proceeded to: (1) order another tanker truck of twice-tested potable water for general use at the McConnell Unit; (2) circumvent the City of Beeville and obtain independent testing of the municipal water supply; and (3) lift the boil water notice only after receiving results showing acceptable levels of chlorine and the absence of harmful bacteria. (D.E. 120-3, p. 3). Defendant Pendarvis stated in his affidavit that drinking water was available to the entire offender population from at least three separate sources during the boil water notice period in August 2017 and that there was no indication the water supplied to the McConnell Unit ever was contaminated with bacteria. (D.E. 120-3, p. 3).

Plaintiff alleged in his amended complaint that Defendant Pendarvis was "motivated by evil intent" when he failed to obey the notice and provide Plaintiff with either boiled water or bottled water to drink. (D.E. 65, p. 20). Plaintiff, however, has come forward with no evidence in connection with the summary judgment motion to establish a genuine issue of material fact as to whether: (1) Defendant Pendarvis's actions in August 2017 in response to the boil water notice placed Plaintiff at a substantial risk of serious harm; or (2) Defendant Pendarvis knew of a serious risk of harm to Plaintiff and disregarded that risk through his actions taken in August 2017.

In sum, even when taking as true the evidence in a light most favorable to Plaintiff, the uncontroverted summary judgment evidence demonstrates that Plaintiff has failed to state an Eighth Amendment claim of deliberate indifference against Defendant

Pendarvis in his individual capacity.

### (2) Step 2 – Objective reasonableness

Because Plaintiff has failed to state a constitutional violation as to Defendants sued in their individual capacities, it is unnecessary to examine whether their actions were reasonable. *See Saucier*, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate). Thus, it is respectfully recommended that Defendants be granted summary judgment in their favor as to Plaintiff's deliberate indifference claims against them in their individual capacities and that such claims be dismissed with prejudice.

### B. Defendants in their Official Capacities

With respect to his deliberate indifference claim, Plaintiff also seeks declaratory and injunctive relief against Defendants in their official capacities. In their summary judgment, Defendants do no specifically address Plaintiff's claims against them in their official capacities. Their contentions seeking entitlement to qualified immunity only reference Plaintiff's claims against them in their individual capacities. As discussed above, however, Plaintiff's underlying deliberate indifference claims against Defendants lack factual support and are subject to dismissal. Thus, his claims seeking declaratory and injunctive relief against Defendants in their official capacities are also subject to dismissal. *See Jackson v. Ocwen Loan Servicing, LLC*, No. 3:17-cv-3287, 2018 WL 1001859, at *12 (N.D. Tex. Jan. 8, 2018) (recognizing that "[a] request for declaratory judgment depends on a viable underlying claim"); *Duarte v. City of*

*Lewisville*, 136 F. Supp. 3d 752, 791 (E.D. Tex. Sep. 28, 2015) (explaining that "a claim for injunctive relief is a remedy that does not stand alone, but requires a viable underlying legal claim"). Accordingly, the undersigned respectfully recommends that Plaintiff's claims against Defendants in their official capacities for declaratory and injunctive relief be dismissed pursuant to § 1915(e)(2)(B).[2]

## VI. RECOMMENDATION

Based on the foregoing, the competent summary judgment evidence establishes that Plaintiff's Eighth Amendment claims of deliberate indifference are subject to dismissal and that Defendants Lumpkin and Pendarvis are entitled to qualified immunity with respect to Plaintiff's claims against them in their individual capacities. Accordingly, it is respectfully recommended that the Court **GRANT** Defendants' motion for summary judgment (D.E. 120). It is respectfully recommended further that Plaintiff's claims against Defendants Lumpkin and Pendarvis in their official capacities for declaratory and injunctive relief be dismissed pursuant to § 1915(e)(2)(B).

ORDERED this 8th day of May, 2020.

_____
Julie K. Hampton
United States Magistrate Judge

---

[2] Section 1915(e)(2(B) mandates dismissal "at any time" if the court determines that the action "fails to state a claim upon which relief may be granted" or is "frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B).

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).